IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-68269-SMS |
| JESSE LEO HOOPER, JR. and DEIDRA DENISE HOOPER, | CHAPTER:  13 |
| Debtor. | JUDGE:  SAGE M. SIGLER |
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2003-CB6, | CONTESTED MATTER |
| Movant, | |
| v. | |
| JESSE LEO HOOPER, JR. and DEIDRA DENISE HOOPER, Debtor NANCY J. WHALEY, Trustee, | |
| Respondents. | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1201, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 9:30 A.M., on May 15, 2018.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including

addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

*Radha Gordon*

Radha Gordon, Bar No.: 347192
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: rgordon@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>JESSE LEO HOOPER, JR. and<br>DIEDRA DENISE HOOPER<br><br>                    Debtor. | CASE NO. 17-68269-SMS<br><br>CHAPTER:  13<br><br>JUDGE:  SAGE M. SIGLER |
| THE BANK OF NEW YORK MELLON F/K/A<br>THE BANK OF NEW YORK AS<br>SUCCESSOR IN INTEREST TO JPMORGAN<br>CHASE BANK, NATIONAL ASSOCIATION,<br>AS TRUSTEE FOR C-BASS MORTGAGE<br>LOAN ASSET-BACKED CERTIFICATES,<br>SERIES 2003-CB6,<br><br>                    Movant,<br><br>v.<br><br>JESSE LEO HOOPER, JR. and<br>DEIDRA DENISE HOOPER, Debtors,<br>JULIA MARIE HOLMES, Co-Debtor<br>NANCY J. WHALEY, Trustee,<br><br>                    Respondents. | CONTESTED MATTER |

<u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY
AND THE CO-DEBTOR STAY</u>

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay and pursuant to Section 1301(c) of the Bankruptcy Code for relief from the co-debtor stay, for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Mortgage.

2.      Movant is the holder or the servicer of a loan secured by certain real property in

which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 1630 Mary Sue Drive, Baton Rouge, LA 70810.

3.      There has been a default in mortgage payments which have come due since this case was filed. As of March 21, 2018, five (5) post-petition payments have been missed.

4.      The unpaid principal balance is $95,642.62, and interest is due thereon in accordance with the Promissory Note.

5.      Because of the default and clear inability to make all required payments, Movant is not adequately protected. Movant's interest would also be irreparably harmed by the continuation of the co-debtor stay.

6.      Because the Loan Documents so provide, Movant is entitled to reasonable attorney's fees and costs in the amount of $1,031.00.

7.      Movant requests that in the event the Motion is granted, the Trustee be ordered to cease funding any balance of Movant's claim.

8.      Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

9.      Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for Relief for The Bank of New York Mellon f/k/a The Bank of New York as successor in interest to JPMorgan Chase Bank, National Association, as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates, Series 2003-CB6, and is entitled to proceed accordingly.  Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of The Bank of New York Mellon f/k/a The Bank of New York as successor in interest to JPMorgan Chase Bank, National Association, as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates,

Series 2003-CB6.  The Bank of New York Mellon f/k/a The Bank of New York as successor in interest to JPMorgan Chase Bank, National Association, as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates, Series 2003-CB6 has the right to foreclose because it is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan.  The Bank of New York Mellon f/k/a The Bank of New York as successor in interest to JPMorgan Chase Bank, National Association, as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates, Series 2003-CB6, directly or through an agent has possession of the promissory note and the promissory note is either made payable to The Bank of New York Mellon f/k/a The Bank of New York as successor in interest to JPMorgan Chase Bank, National Association, as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates, Series 2003-CB6, or has been duly endorsed.

10.     Movant requests that upon entry of an Order Granting this Motion and Lifting the Stay, the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that the secured portion of Movant's claim be deemed withdrawn without prejudice to Movant's right to file  an amended unsecured claim for any deficiency and that absent a stipulation or order to the contrary, Movant shall return to the Chapter 13 Trustee any payments received from the Trustee on account of Movant's secured claim, after entry of an Order Granting this Motion.

11.     Movant requests that it be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and resolutions, as appropriate with regard to the underlying Mortgage and Note, including, but not limited to loan modification or other loss mitigation alternatives.

WHEREFORE, Movant prays for an Order lifting the automatic stay and co-debtor stay, authorizing it to proceed with the exercise of its private power of sale and to foreclose under its Loan Documents and appropriate state statutes, and for an award of reasonable attorney's fees. Movant also prays that Fed. R. Bankr. P. 4001(a)(3) be waived. Movant also prays that the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that Movant be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, and for such other and further relief as is just and equitable.

Radha Gordon, Bar No.: 347192
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: rgordon@aldridgepite.com

# NOTE

August 7, 2003            Baton Rouge                        LA
(Date)                    (City)                             (State)

## 1630 Mary Sue Drive, Baton Rouge, LA 70810
(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 89,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Regions Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid I will pay interest at a yearly rate of **6.800%**. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

I agree that the interest is governed by the provisions of Section 27 of the Federal Deposit Insurance Act (12 U.S.C. Section 1831(a)), and those regulations issued to interpret and implement Section 27. I further agree that under Section 27, the interest rate, including the prepayment penalty, is subject only to limitations of the law of Alabama. I also agree, except as governed by the aforementioned laws, that this loan shall be subject to the laws of the state in which the real property that secures this Note is located.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **17th** day of each month beginning on **September 17, 2003**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of it's scheduled due date and will be applied to interest before principal. If on, **August 17, 2033**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at

**Regions Bank , 500 Forest Point Circle , Charlotte, NC 28273**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 580.22 .

### 4. BORROWER'S RIGHT TO PREPAY

**(A) Prepayment**    I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes

**(B) Prepayment Penalty**

If I prepay this loan in full within 3 year(s) from the date of this loan, I agree to pay a prepayment penalty in an amount equal to 6.00% of the balance of the loan outstanding on the date of prepayment. This amount, known as a prepayment penalty, will be in addition to any other charges I may owe under the provisions of the Note or the Security Instrument that secures the Note. If I make a prepayment in full on or after the 3rd anniversary date of the Note, the Note Holder will impose no prepayment penalty.

Multistate Fixed Rate Note-Single Family
(EF5NREG)12/02(Louisiana Version)
Loan Number ████

Page 1 of 3

Initials 



PLAINTIFF'S
EXHIBIT
A

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00 %** of my overdue payment of principal and interest, but not more than U.S. $25.00. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### (F) Dishonored or Returned Check Fee

If any payment that I make to the Note Holder by check, order or draft drawn on any bank, credit union, savings and loan association, or other financial institution for the payment of money is dishonored or returned to the Note Holder for any reason, including insufficient funds, I will pay the Note Holder upon demand a dishonored or returned check fee of the greater of 5% of the amount of the check, order or draft or $25.00.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Julia Marie Holmes_ (Seal)                                          _____ (Seal)

Julia Marie Holmes                 -Borrower                                               -Borrower

_____ (Seal)                                          _____ (Seal)

                               -Borrower                                                   -Borrower

_____ (Seal)                                          _____ (Seal)

                               -Borrower                                                   -Borrower

_____ (Seal)                                          _____ (Seal)

                               -Borrower                                                   -Borrower

"NE VARIETUR" for identification with a mortgage given before me on August 7, 2003

_____
Notary qualified in _East Baton Rouge_ Parish, Louisiana.

EP5N
Loan Number ▇▇▇▇                        Page 3 of 3                        Initials _____

## Note Endorsements

Borrower(s): Julia Marie Holmes
Property Address: 1630 Mary Sue Drive, Baton Rouge, LA  70810

Without Recourse, Pay to the Order of

**Equifirst Corporation**

**Regions Bank**
By: _____

Andrea Okey
Assistant Vice President

Without Recourse, Pay to the Order of:

**Equifirst Corporation**
By: _____

Andrea Okey
Assistant Vice President

EF5nendr (7/03)

Page 1 of 1

Prepared by: **Nadine Alvarez**
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number: 561-682-8835

**ATTORNEY CODE:** ███

## ALLONGE

BORROWERS: **JULIA MARIE HOLMES**

PRESENTOWNER AND HOLDER: **EQUIFIRST CORPORATION**

NOTE EXECUTION DATE: **AUGUST 07, 2003**

NOTE AMOUNT: **$ 89,000.00**

     This allonge shall be annexed to the original Note, referenced above for purposes of transferring same from the present Owner and Holder of the Note, **EQUIFIRST CORPORATION** ("Transferor") as of the date set forth below. As a result of said transfer, **EQUIFIRST CORPORATION** has no further interest in the Note.

Date: APRIL 05, 2012

    Pay to the order of

**THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2003-CB6,** without recourse, representation or warranty express or implied this 05TH day of APRIL, 2012.

**EQUIFIRST CORPORATION
BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC.**

By: _____
Name:  Leticia N. Arias
Title:    Contract Manager

# M

Return To:
**Regions Bank**
**Attn: Collateral Mgmt.**
**500 Forest Point Circle**
**Charlotte, NC 28273**
Prepared By:
**Monica Ross**
**500 Forest Point Circle**
**Charlotte, NC 28273**

ORIG  132  NBL 11530

——————————————— [Space Above This Line For Recording Data] ———————————————

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **August  7,  2003** together with all Riders to this document.

**LOUISIANA** -Single Family- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**      Form 3019 1.01

-6A(LA) (0107) 01
Page 1 of 19



VMP MORTGAGE FORMS  (800)521-7291

**Certified True and Correct Copy**
eCertID:

**Doug Welborn**
East Baton Rouge Parish
Clerk of Court

Generated Date:
3-5-2014 2:59 PM

(B) "Borrower" is **Julia Marie Holmes**

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. The tax identification number of MERS is 54-1927784. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

(D) "Lender" is **Regions Bank**

Lender is a **Corporation**
organized and existing under the laws of **Alabama**
Lender's address is **500 Forest Point Circle, Charlotte, NC 28273**

Lender's tax identification number is **63-0371391**
(E) "Note" means the promissory note signed by Borrower and dated **August 7, 2003**
The Note states that Borrower owes Lender **eighty-nine thousand and 00/100**

                                                                                                    **Dollars**
(U.S. **$89,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 17, 2033**

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. All Riders to this Security Instrument are deemed to be a part of this Security Instrument as if fully incorporated herein. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider         ☒ Other(s) [specify]
                                                            **Arbitration Rider**
                                                            **PrePayment Penalty Rider**

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller

-6A(LA) (0102) 01                          Page 2 of 15                         Form 3019  1/01



**Certified True and Correct Copy**
eCertID:

Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date
3-5-2014 2:59 PM

machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
       **Parish**       of       **East Baton Rouge**
    [Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]
**See Attached Exhibit A**

Parcel ID N███████████

**1630 Mary Sue Drive**
**Baton Rouge**
("Property Address"):

which currently has the address of

███████████          [Street]
[City], Louisiana **70810**      [Zip Code]

█4A(LA) (0102)01         Page 3 of 15



**Form 3019  1/01**


**Certified True and Correct Copy**
eCertID: ███████████


**Doug Welborn**
East Baton Rouge Parish
Clerk of Court

Generated Date.
3/5/2014 2:59 PM

Alteration and subsequent re-filing of this certified copy may constitute a crime under La. R.S. 14:132, 133 and/or RPC Rule 3 Vol. I

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

-6A(LA) (0102) 01                    Page 4 of 15                    Form 3019  1/01


Certified True and
Correct Copy
eCertID:

Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date

3/5/2014 2:59 PM

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

 -6A(LA) (0102) 01                    Page 5 of 15                        Form 3019   1.01


**Certified True and Correct Copy**
eCertID:

Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date:
3/5/2014 2:59 PM

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.



-6A(LA) (0102)01                                Page 6 of 15                                Form 3019 1/01

Certified True and
Correct Copy
eCertID:

Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date

3/5/2014 2:59 PM

Alteration and subsequent re-filing of this certified copy may be restricted by R.S. 14:132, 133, and/or RPC Rule 1.15(d)(6)

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's



-6A(LA) (0102) 01                    Page 7 of 15                         Form 3019  1/01

Certified True and
Correct Copy
eCertID:

Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date
3/5/2014 2:59 PM

knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's

  

Page 8 of 15    Form 3019 1/01

 Certified True and Correct Copy eCertID:


Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date:
3/5/2014 2:59 PM

requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

-6A(LA) (0102)01                    Page 8 of 15                    Form 3019  1/01


Certified True and Correct Copy
eCertID

Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date
3/5/2014 2:59 PM

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the



-6A(LA) (0102)01                    Page 11 of 15                    Form 3010 1.01


Certified True and
Correct Copy
eCertID:


Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date:
3/5/2014 2:59 PM

Alterations and subsequent scribling of this document  do not alter either La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3)

reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited



-6A(LA) (0002)/01                    Page 11 of 15                    Form 3019   1/01

Certified True and
Correct Copy
eCertID:

Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date
3/5/2014 2:59 PM

Alteration and subsequent printing of this document may alter the La. R.S. 14:132.1(3), and/or RPL Rule 3.5(a)(3)

to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

  

-6A(LA) (0102).01                    Page 12 of 15                    Form 3019  1/01


Certified True and
Correct Copy
eCertID-


Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date:
3/5/2014 2:59 PM

Alteration and subsequent re-filing of this certified copy may be prohibited by law. See La. R.S. 14:132, 133 and/or RPC Rule 5.6(a)(b)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Notice of Default; Right to Cure.** Lender shall give notice to Borrower prior to acceleration following Borrower's failure to pay principal, interest, and other fees and charges as provided in the Note, or following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure as available under Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may accelerate and require immediate payment in full of all sums secured by this Security Instrument without further demand for payment.

**23. Foreclosure.** Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law. For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted by Applicable Law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sales; (b) the demand and three days' delay as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) the three days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2733 of the Louisiana Code of Civil Procedure and all other articles not specifically mentioned above. Borrower agrees that any declaration of fact made by an authentic act before a notary public and two witnesses by a person declaring such facts to be within his or her knowledge, will constitute authentic evidence of such facts for purposes of foreclosure under Applicable Law and for purposes of La. R.S. Section 9:3504(D)(6).

**24. Cumulative Remedies.** Lender shall have such additional default remedies as may be available under then Applicable Law. All of Lender's remedies shall be cumulative, and nothing under this Security Instrument shall limit or restrict the remedies available to Lender following default.

**25. Keeper.** Should the Property be seized as an incident to an action for recognition or enforcement of this Security Instrument by executory process, sequestration, attachment, writ of *fieri facias*, or otherwise, Borrower agrees that the court issuing such an order shall, if requested by Lender, appoint Lender, or any person or entity designated by Lender, as keeper of the Property as provided in La. R.S. Section 9:5136, *et. seq*. Borrower agrees to pay the reasonable fees of such a keeper, which fees shall be secured by this Security Instrument as an additional expense.

 -6A(LA) (0102/01)

Page 13 of 15



Form 3019  1/01



**Certified True and Correct Copy**
eCertID:

**Doug Welborn**
East Baton Rouge Parish
Clerk of Court

Generated Date

3/5/2014 2:59 PM

Alterations and subsequent re-filing of this material may be violation La. R.s. 14:132, 133, and or RPC Rule 3.4(a)(b)

**26. Cancellation.** This Security Instrument shall remain in effect until canceled from the public records. Following the full payment and satisfaction of all sums secured by the Security Instrument, Borrower may request in writing that Lender provide Borrower with the original paraphed Note marked "paid in full", or with an appropriate mortgage cancellation certificate, for submission to the Clerk of Court or Recorder of Mortgages for the Parish of Orleans for the purpose of canceling the Security Instrument. Lender may delay providing Borrower with the canceled Note or with a mortgage cancellation certificate for up to 60 days following Lender's receipt of Borrower's request. Unless Lender agrees to cancel this Security Instrument from the public records. Borrower shall be responsible for doing so. Borrower shall pay all cancellation costs.

**27. Waiver of Homestead Rights.** Borrower (and Borrower's spouse to the extent applicable) waive any homestead rights and other exemptions from seizure with respect to the Property as may be provided under Applicable Law.

**28. Savings and Loan Association.** If Lender is a savings and loan association or thrift institution, the Note and all sums secured by this Security Instrument shall have the benefits of La. R.S. Section 6:830.

**29. Future Advances.** Lender may, but shall not be required to, make advances to protect the security of this Security Instrument pursuant to Section 9. At no time shall the principal amount of the indebtedness secured by this Security Instrument, including advances made pursuant to Section 9, exceed 150% of the original amount of the indebtedness set forth in the Note.

**30. Late Charges.** Should Borrower fail to pay any installment of principal and interest under the Note within **15** days of when due, Borrower agrees to pay Lender a late charge in an amount equal to **5.00%**. The late charge cannot exceed $25.00.

**31. Marital Status.** Borrower's marital status is: **Unmarried**

**32. Additional Defined Terms.** As used in this Security Instrument, "Lender" additionally includes any successors and assigns of the Lender first named above, as well as any subsequent holder or holders of the Note, or of any indebtedness secured by this Security Instrument.

As used in this Security Instrument, "Note" additionally includes any substitute note or notes issued in replacement of Note first described above. It is Borrower's intent that this Security Instrument secure all renewals, extensions, refinancings, and modifications of the Note, to the extent provided by La. R.S. Section 9:5390.

As used in this Security Instrument, "Lien" also means a privilege, mortgage, security instrument, assignment or other encumbrance. "Real Property" means "immovable property" as that term is used in the Louisiana Civil Code. "Condemnation" includes "expropriation" as that term is used in Louisiana law.

**33. Property Includes Servitudes and Component Parts.** The Property subject to this Security Instrument additionally includes servitudes and component parts now or hereafter attached to or incorporated into the Property.

**34. Full Ownership.** Borrower is the full and lawful owner of the Property. If the Security Instrument is on a leasehold interest, and Borrower subsequently acquires ownership of the Property, Borrower's leasehold and ownership interests in the Property shall not merge unless Lender agrees to the merge in writing.

**35. Modification of Section 13 of this Security Instrument.** Section 13 of this Security Instrument is hereby modified to the following extent.

Each Borrower covenants and agrees that Borrower's obligations and liabilities under this Security Instrument and under the Note shall be joint, several and solidary with all other Borrowers and with each guarantor of the Note (if applicable). However, to the extent that the Property is community-owned immovable (real) property, and Borrower's spouse co-signs this Security Instrument, but does not co-sign the Note, Borrower's spouse is co-signing this Security Instrument for purpose of: (a) concurring with the granting of this Security Instrument on the community-owned Property (to the extent required under Civil Code Article 2347),



Certified True and
Correct Copy
eCertID-



Doug Welborn
Civil Baton Rouge Parish
Clerk of Court

Generated Date.

3/5/2014 2:59 PM

without obligating the separate property of Borrower's spouse; and (b) waiving any homestead rights to which Borrower's spouse may be entitled under Applicable Law. Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 13 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

**36. Additional Waivers.** Borrower hereby waives production of mortgage, conveyance and other certificates with respect to the Property, and relieves and releases the Notary Public before whom this Security Instrument was passed from all responsibility and liability in connection therewith.

THUS DONE, AND PASSED, on this 7th day of August 2003, in the presence of the undersigned Notary Public, and in the presence of the undersigned competent witnesses, who hereinto sign their names, along with Borrower, after being duly sworn and after reading of the whole.

WITNESS(ES) (as to all signatures):

Francesca Howard

Juanita Hopkins

Julia Marie Holmes _____ (Seal)
Julia Marie Holmes    -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)        _____ (Seal)
        -Borrower                        -Borrower

_____ (Seal)        _____ (Seal)
        -Borrower                        -Borrower

_____ (Seal)        _____ (Seal)
        -Borrower                        -Borrower

Notary qualified in East Baton Rouge Parish, Louisiana



-6A(LA) (0103) 01        Page 15 of 15        Form 3019 1/01


**Certified True and Correct Copy**
eCertID:

**Doug Welborn**
East Baton Rouge Parish
Clerk of Court

Generated Date:
1/5/2014 2:59 PM

Alteration and subsequent re-filing of this document may or distort 1 x 8 x 14-112-153, and or 895 Rule 1 Vag 11

## ARBITRATION RIDER
(To Be Recorded Together with Security Instrument)

THIS RIDER is made this 7th day of August 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to Regions Bank (the "Lender") of the same date and covering the property described in the Security Instrument and located at

1630 Mary Sue Drive, Baton Rouge, LA 70810

(Property Address)

As used in this Rider, the term "Lender" includes Lender's successors and assigns and the company servicing the Note on Lender's behalf.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.** Any claim, dispute or controversy (whether in contract, tort, or otherwise) arising from or related to the loan evidenced by the Note, including but not limited to all statutory claims, any claim, dispute or controversy that may arise out of or is based on the relationships which result from the Borrower's application to the lender for the loan, the closing of the loan, or the servicing of the loan, or any dispute or controversy over the applicability or enforceability of this arbitration agreement or the entire agreement between Borrower and Lender (collectively "claim"), shall be resolved, upon the election of either Borrower or Lender, by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. Sections 1-16) and the Code of Procedure of the National Arbitration Forum in effect at the time a claim is filed. Copies of the arbitration rules and forms can be obtained and any claims can be filed at any National Arbitration Forum office, at P.O. Box 50191, Minneapolis, MN 55404, on the World Wide Web at www.arb-forum.com or by calling (800) 474-2371.

This agreement to arbitrate shall apply no matter by whom or against whom a claim is made. Any election to arbitrate may be made at any time, regardless of whether a lawsuit has been filed or not, and such party making the election may bring a motion in any court having jurisdiction to compel arbitration of any claim and/or to stay the litigation of any claim pending arbitration. Any participatory arbitration hearing will take place in the federal judicial district of the Borrower's residence, unless a different location is agreed to by Borrower and Lender. At Borrower's request, Lender will advance the first $150 of the filing and hearing fees for any claim which the Borrower may file against the Lender. The arbitrator will decide which party will ultimately be responsible for paying these fees. All claims between the Borrower and Lender shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons, or class of persons other than Borrower or Lender. The arbitrator shall apply relevant law and provide written, reasoned findings of fact and conclusions of law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

**EXCLUSIONS FROM ARBITRATION.** This arbitration agreement shall not apply to rights or obligations under the loan documents that allow the Lender to foreclose or otherwise take possession of property securing the loan, including repossession, foreclose or unlawful detainer. Nor shall it be construed to prevent any party's use of bankruptcy or judicial foreclosure. No provision of this agreement shall limit the right of the Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to reinstate". Subject to these limitations, this arbitration agreement will survive the pay-off of the loan.

**SEVERABILITY.** If the arbitrator or any court determines that one or more terms of this arbitration agreement or the arbitration Code are unenforceable, such determination shall not impair or affect the enforceability of the other terms of this arbitration agreement or the arbitration Code.

17045 (5/02)                              Page 1 of 2



Certified True and
Correct Copy
eCertID:



Doug Welborn
East Baton Rouge Parish
Clerk of Court

Generated Date:
3-5-2014 2:59 PM

**NOTICE:** WHEN YOU SIGN THIS ARBITRATION RIDER, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE MAY BE DECIDED EXCLUSIVELY BY ARBITRATION. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH A CLAIM OR DISPUTE. DISCOVERY IN ARBITRATION PROCEEDINGS IS LIMITED IN THE MANNER PROVIDED BY THIS AGREEMENT AND THE RULES OF ARBITRATION. THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. IT IS IMPORTANT THAT YOU READ THIS ENTIRE ARBITRATION AGREEMENT CAREFULLY BEFORE SIGNING THIS ARBITRATION RIDER.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

_Julia Marie Holmes_

Julia Marie Holmes



**Certified True and Correct Copy**
eCertID

Attestation and subsequent re-filing of the certified copy relate to LSA-R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

**Doug Welborn**
East Baton Rouge Parish
Clerk of Court

Generated Date:
3/5/2014 2:59 PM

## Prepayment Penalty Rider to Security Instrument
(To Be Recorded Together with Security Instrument)

This PREPAYMENT PENALTY RIDER (the "Rider") is made this 7th day of August, 2003 and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(s)") to Regions Bank (the "Lender") to secure repayment of a Note in the amount of U.S. $ 89,000.00

In addition to the agreements and provisions made in the Note and the Security Instrument, both the Borrower(s) and the Lender further agree as follows

### PREPAYMENT PENALTY

If I prepay this loan in full within 3 year(s) from the date of this loan, I agree to pay a prepayment penalty in an amount equal to 6.00% of the balance of the loan outstanding on the date of prepayment. This amount, known as a prepayment penalty, will be in addition to any other amounts I may owe under the provisions of the Note or the Security Instrument that secures the Note. If I make a prepayment in full on or after the 3rd anniversary date of the Note, the Note Holder will impose no prepayment penalty.

_Julie Marie Holmes_
**Julia Marie Holmes**

_____

_____        _____

_____        _____

EF052 (05/02)



**Certified True and Correct Copy**
eCertID:

**Doug Welborn**
East Baton Rouge Parish
Clerk of Court

Alterations and subsequent re-filing of this control document are LSA-R.S. 44:112, 193, and/or RPC Rule 3.9(a)(b)

Generated Date
3-5-2014 2:59 PM

East Baton Rouge Parish Cir      Court document                    Page 19 of 19

LEGAL DESCRIPTION

EXHIBIT "A"

ONE (1) CERTAIN LOT OR PARCEL OF GROUND, together with all the buildings and improvements thereon, situated in the Parish of East Baton Rouge, Louisiana, in that subdivision thereof known as MAYFAIR NORTH, 2nd FILING, and being more particularly described according to the official map of said subdivision, on file and of record in the office of the Clerk and Recorder for said parish and state, as LOT TWO HUNDRED SEVEN (207), said subdivision, said lot having such measurements and dimensions and being subject to such servitudes as are more particularly described on said subdivision map.

ORIG 132    MOB 11530

FILED AND RECORDED
EAST BATON ROUGE PARISH, LA.

2003 SEPT 24    ON 01:10:56
FTL M      FOLIO
DOUG WELBORN

CLERK OF COURT & RECORDER

CERTIFIED TRUE COPY
BY
---------------------------
DEPUTY CLERK & RECORDER

(HOLMES, JULIA P



Certified True and
Correct Copy
eCertID:

Doug Welborn
East Baton Rouge Parish
Clerk of Court

Statutes and subsequent re-filing of documents per section La. R.S. 44:132, 133, and at RPI  Rule 1 Vault

Generated Date
3/5/2014 2:59 PM

## CORPORATE ASSIGNMENT OF MORTGAGE

East Baton Rouge, Louisiana
SELLER'S SERVICING #: ▮▮▮▮▮▮ "HOLMES"
SELLER'S LENDER ID#: ▮▮▮▮▮
OLD SERVICING #:

MIN #: ▮▮▮▮▮▮▮▮▮   SIS #: 1-888-679-6377

Date of Assignment: July 20th, 2015
Assignor: Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Regions Bank, its
successors and/or assigns at PO BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST, STE C, DANVILLE, IL
61834
Assignee: THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST
TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR C-BASS MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES 2003-CB6 at C/O OCWEN LOAN SERVICING, LLC., 1661
WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL  33409

Executed By: JULIA MARIE HOLMES  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"),
SOLELY AS NOMINEE FOR REGIONS BANK, ITS SUCCESSORS AND/OR ASSIGNS
Date of Mortgage: 08/07/2003 Recorded: 09/24/2003  in Book: N/A Original: 132 as Bundle: 11530  In the Parish of
East Baton Rouge, State of Louisiana.

Property Address: 1630 MARY SUE DRIVE, BATON ROUGE, LA  70810

Legal: ONE (1) CERTAIN LOT OR PARCEL OF GROUND, together with all the buildings and improvements
thereon, situated in the Parish of East Baton Rouge, Louisiana, in that subdivision thereof known as MAYFAIR
NORTH, 2nd FILING, and being more particularly described according to the official map of said subdivision, on file
and of record in the office of the Clerk and Recorder for said parish and state, as LOT TWO HUNDRED SEVEN
(207). said subdivision, said lot having such measurements and dimensions and being subject to such servitudes as
are more particularly described on said subdivision map.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $89,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Regions Bank, its successors
and/or assigns
On _____ **JUL 2 1 2015**

By: _____ , Assistant
    **Vicki Pospisil**
Secretary

STATE OF _____ **Iowa**
COUNTY OF _____ **Black Hawk**

On **JUL 2 1 2015** _____ before me, _____ **REBECCA DAMME** _____ Notary Public in and for **Black Hawk** ____ in
the State of _____ **Iowa** ____, personally appeared _____ **Vicki Pospisil** ____, Assistant Secretary, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
**REBECCA DAMME**
Notary Expires ▮▮ 26 /7

REBECCA DAMME
COMMISSION NO.786690
MY COMMISSION EXPIRES
OCTOBER 28, 2017

(This area for notarial seal)

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

When Recorded Return To: OCWEN LOAN SERVICING, LLC 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID 83401
Recording Requested By: OCWEN LOAN SERVICING, LLC

*JOS*JOSGMAC*07/20/2015 01.05.30 PM

East Baton Rouge Parish Clerk of Court

Page 1 of 2

Orig._____ Ridte._____    REC 652BK159339    Form 30

## CASH SALE
### STATE OF LOUISIANA

On this __20th__ day of __August__, 19 79

before me, a Notary Public for the Parish of East Baton Rouge, Louisiana,

and in the presence of the subscribing witnesses, personally appeared:

NEO-CLASSIC BUILDERS, INC., a Louisiana Corporation, domiciled in and doing business in the Parish of East Baton Rouge, State of Louisiana, represented herein by the undersigned agent, duly authorized by resolution of the Board of Directors a copy of which is on file with the Clerk and Recorder for East Baton Rouge Parish, Louisiana;

herein called SELLER, resident__ of and domiciled in __Baton Rouge__, State of __Louisiana__

whose permanent mailing address is declared to be__

who declared that for the price of __THIRTY - FIVE THOUSAND AND NO/100 ($35,000.00)__ _____

_____ DOLLARS,

cash, receipt of which is acknowledged, SELLER hereby sells and delivers with full warranty of title and subrogation to all rights

and actions of warranty SELLER may have, unto:

JULIA MARIE HOLMES, a single woman, resident of the legal age of majority of East Baton Rouge Parish, Louisiana,

herein called BUYER, resident__ of and domiciled in __Baton Rouge__, State of __Louisiana__,

whose permanent mailing address is declared to be __1630 Mary Sue Drive__

the following described property the possession and delivery of which BUYER acknowledges:

ONE CERTAIN LOT OR PARCEL OF GROUND, together with all buildings and improvements thereon, situated in East Baton Rouge Parish, Louisiana, in that subdivision known as MAYFAIR NORTH SUBDIVISION, SECOND FILING, and being designated according to the official map of said subdivision on file and of record with the Clerk and Recorder for East Baton Rouge Parish, Louisiana, as LOT TWO HUNDRED SEVEN (207), said lot measuring 70' front on Mary Sue Drive and running back between equal and parallel lines a distance of 125', measuring 70' across the rear, said lot being subject to such servitudes and being more particularly shown on the official subdivision map.

East Baton Rouge Parish Clerk of Court

Page 2 of 2

CERTIFIED
TRUE COPY

ORIG. _____ ORIG
FILED IN RECORDS

2019 AUG 31 AM 11: 3??

CON. BK. 2746 FOL. 217

DEPUTY CLERK & RECORDER

All parties signing the within instrument have declared themselves to be of full legal capacity.

United States Internal Revenue Stamps required by law in the amount of $_____ have been affixed hereto and duly cancelled.

The certificate of mortgages as required by Article 3304 of the revised Civil Code of Louisiana is dispensed with by the parties. All taxes assessed against the property herein conveyed have been paid as appears from the certificate hereto annexed. Taxes for the year of __1979__ will be p'd by __prorated__

21N   All covenents and stipulations herein contained and all the obligations herein assumed shall inure to the benefit and be binding upon the heirs, successors, a't assigns of the respective parties, and the BUYER, his heirs and assigns shall have and hold the ...ribed property in full ownership, ...rever.

Thus done, read and passed at my office in __Baton Rouge__, Parish of East Baton Rouge, Louisiana, in the presence of me, Notary, and the undersigned competent witnesses who have signed in the presence of the parties and me, Notary, on the date first above written.

WITNESS:

NEO-CLASSIC BUILDERS, INC.,

Kathy D. Underwood

BY: Gerald J. Kinnard

Glenda S. Dowdy

Julia Marie Holmes

WILLIAM T. ADCOCK                    Notary Public

MB 6528 M 9339

FILED FOR RECORD _____ 19____ at _____ o'clock ____ M, Original.

Bundle _____ .

By, Clerk and Recorder, East Baton Rouge Parish

DULY RECORDED in Conveyance Book No. _____ Folio _____ of the records of the Parish of East Baton Rouge, Louisiana,

on the _____ day of _____ 19____ at _____ o'clock ____ M.

By, Clerk and Recorder

Form 83   PM 41744

5.50

| IN THE MATTER OF | * | NUMBER _____ ; SECTION * * |
| | * | 19TH JUDICIAL DISTRICT COURT |
| THE SUCCESSION OF | * | PARISH OF EAST BATON ROUGE |
| JULIA MARIE HOLMES | * | STATE OF LOUISIANA |

FEB 26 2008

## PETITION FOR POSSESSION

BY _____
BY CLERK OF COURT

The Petition of Deidra B. Hooper, a resident of lawful age of majority of the State of Georgia, being the only descendant and sole heir of her deceased mother, namely, Julia Marie Holmes, who, with respect, represents that:

1.

Julia Marie Holmes departed this life on July 18, 2007 having maintained her residence and domicile up until her death in the Parish of East Baton Rouge, Louisiana as will appear from the Annexed Affidavit of Death and Heirship filed in this matter.

2.

The deceased, Julia Marie Holmes was divorced from Woodrow Bryant at the time of her death. One child was born to her during her lifetime, namely, Deidra B. Hooper, your Petitioner herein, who is of sound mind and over the age of 23.

3.

Decedent died intestate and under the law of Louisiana, Deidra B. Hooper, is entitled to be recognized as owning all of the property of the deceased.

4.

Decedent, Julia Marie Holmes' estate is relatively free from debt, and hence, there does not appear to be, at this time, any necessity for an administration of the decedent's estate.

5.

Your petitioner, Deidra B. Hooper is the sole heir of the deceased and is entitled to be placed in full and complete ownership of all of the property belonging to the Succession of Julia Marie Holmes.

6.

Petitioner affirms, as evidenced by the Affidavit of Verification attached hereto, that she collectively requests, as sole heir, to be sent into possession of the deceased's entire estate at this time.

MAR   3 2008

7.

The decedent, Julia Marie Holmes, has made no transfer within one year immediately preceding her death for inadequate consideration.

8.

The record of this proceeding shows that the Succession has been opened within the last day of the ninth month following the death of the decedent and in accordance with Louisiana Code of Civil Procedure Article 2951(C) no Louisiana Inheritance Taxes are owed and no Louisiana Inheritance Tax Return is required allowing for the rendering of a Judgment of Possession, at this time.

WHEREFORE, your petitioner, Deidra B. Hooper, prays that:

(1)   Petitioner, Deidra B. Hooper, be recognized as the sole heir of the deceased and be sent and placed into possession of the entire estate of the decedent, in full and complete ownership.

(2)   That there be judgment herein decreeing that no inheritance taxes are due the State of Louisiana, and that no administration of this succession is necessary.

(3)   That there be granted all general and equitable relief.

Respectfully submitted:

Jonathan Holloway, Sr., Esq.
La. Sp. Ct. Bar Roll No.: 26340
5353 Florida Boulevard
Baton Rouge, LA 70806
Telephone:  225-928-2620
Facsimile:  225-928-4731

PROBATE
☑ 01 - SUCCESSIONS
☐ 02 - MINORITY
☐ 03 - INTERDICTION
☐ 04 - OTHER
☐ 00 - TUTORSHIP



IN THE MATTER OF

THE SUCCESSION OF

JULIA MARIE HOLMES

NUMBER " " SECTION "D"

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

**AFFIDAVIT OF VERIFICATION**

**STATE OF GEORGIA**

**COUNTY OF FULTON**

BEFORE ME, the undersigned authority, personally came and appeared:

**DEIDRA B. HOOPER**

who, after first being duly sworn, did depose and state:

That she is the petitioner in the above and foregoing Petition for Possession; that she has read the same and that all the allegations of fact contained therein are true and correct to the best of her knowledge, information and belief.



**DEIDRA B. HOOPER**

SWORN TO AND SUBSCRIBED before me this 23rd day of February, 2008.

**NOTARY PUBLIC**
Printed Name of Notary and Notary No.: _____
My commission expires: _____

CARL
NOTARY PUBLIC
CHEROKEE COUNTY
STATE OF GEORGIA
My Commission Expires August 2, 2010

CAROL E DOWDEN
NOTARY PUBLIC
CHEROKEE COUNTY
STATE OF GEORGIA
My Commission Expires August 2, 2010

IN THE MATTER OF                    *    NUMBER ███████ SECTION " "

THE SUCCESSION OF                   *    19TH JUDICIAL DISTRICT COURT **POSTED**

                                    *    PARISH OF EAST BATON ROUGE, 20██

JULIA MARIE HOLMES                  *    STATE OF LOUISIANA
*****************************************************************************

## AFFIDAVIT OF DEATH AND HEIRSHIP

**STATE OF GEORGIA**

**COUNTY OF FULTON**

BEFORE ME, the undersigned authority, personally came and appeared:

### DEIDRA B. HOOPER

and

### JESSE HOOPER

both being residents of lawful age of the State of Georgia, County of Fulton, who, by me first duly sworn, did depose and state:

That appearers were well and personally acquainted with Julia Marie Holmes; that she departed this life on July 18, 2007 in Houston, Texas. Julia Marie Holmes was, at the time of her death, a resident and domiciled in East Baton Rouge Parish, Louisiana. The decedent was born on November 11, 1944.

That the decedent, Julia Marie Holmes was divorced at the time of her death.

That the decedent, Julia Marie Holmes had only one child, during her lifetime namely, Deidra B. Hooper, who survives her mother and is over the age of 23 years and is of sound mind and body.

The deceased never adopted any children nor was she ever adopted.

The deceased died leaving immovable, movable, incorporeal movable, and corporeal movable property in the Parish of East Baton Rouge, Louisiana. That decedent died intestate.

**DEIDRA B. HOOPER**

**JESSE HOOPER**

SWORN TO AND SUBSCRIBED before me on this 23rd day of February, 2008.

**NOTARY PUBLIC**
Bar Roll No. / Notary No.: _____
My Commission: _____

CAROL E DOWDEN
NOTARY PUBLIC
CHEROKEE COUNTY
STATE OF GEORGIA
My Commission Expires August 2, 2010

| IN THE MATTER OF | * | NUMBER ▊ ; SECTION " ▊ " |
| | * | |
| THE SUCCESSION OF | * | 19TH JUDICIAL DISTRICT COURT |
| | * | PARISH OF EAST BATON ROUGE |
| JULIA MARIE HOLMES | * | STATE OF LOUISIANA |

*********************************************************************

## JUDGMENT OF POSSESSION

Considering the Petition for Possession along with the record of these proceedings, satisfactory proof that no inheritances taxes are due in connection therewith, and the law and evidence to be in favor of the petitioners for the reasons this day orally assigned:

**IT IS ORDERED, ADJUDGED AND DECREED** that Deidra B. Hooper, be and she is hereby recognized as the surviving sole descendant and heir of the entire estate of the deceased, pursuant to Louisiana Law, and as such, Deidra B. Hooper is hereby sent, placed and put into immediate possession of the full ownership of the entire estate of the decedent.

1.  Immovables:

    A)   Property Address:
         1630 Mary Sue Drive
         Baton Rouge, LA 70810-1455
         Lot 207 of Mayfair North

2.  Incoporeal Movables

    A.   Financial Accounts (Investments)

        1.)   Chase Premier Platinum
           Account #. ▊
           Amount: $950.40

        2)   Chase Premier Platinum
           Account #.. ▊
           Amount: $1,836.28

        3)   Chase Basic Checking
           Account #. ▊
           Amount: $166.34

        4)   Chase Premier Platinum Savings
           Account #.. ▊
           Amount: $36,000.00

        5)   Capitol One
           Account #.. ▊
           Amount: $1,775.00

6)     Pelican State Credit Union
       Account #..█
       Amount: $6,300.00

7)     Chase Brokerage
       Account # █
       Amount: $367,647.88

8)     Hartford
       Amount: $101,648.43

9)     Hartford
       Amount: $920.21

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein decreeing that no inheritance taxes are due the State of Louisiana and that the final accounting and tableau of distribution is hereby waived.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all banks, trust companies, savings and loan associations, corporation and all depositories or persons whomsoever having on deposit or in their possession or control, any monies, certificates, including but not limited to any accrued since decedent's death, credits or rights of any kind belonging to or depending upon the estate of, or on the succession of, Julia Marie Holmes deceased, be and they are hereby authorized and required to deliver the same to Deidra B. Hooper, as identified in this Judgment.

JUDGMENT READ, RENDERED AND SIGNED, Baton Rouge, Louisiana this 28

day of _____ Feb , 2008.

_____
JUDGE, 19TH JUDICIAL DISTRICT COURT



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do! ™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

## LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 9/3/2014 which modifies the terms of your home loan obligations as described in detail below:

A.    the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of East Baton Rouge County, and

B.    the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 1630 Mary Sue Drive, Baton Rouge, LA 70810.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1.    In order for the terms of this modification to become effective, you promise to make an initial down payment ("Down Payment") of $ 716.99 on or before 10/1/2014 and one (1) equal monthly payments of principal and interest in the amount of $ 510.30 and any escrowed amount as outlined in section 3 below to Ocwen. ("Trial Period") beginning on 11/1/2014.

2.    You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and the Mortgage will be $95,677.88. Upon modification, your Note will become current and will not be in default.

3.    You will be required to pay to Ocwen, until such time the loan is paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Ocwen as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Ocwen specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to you.

4.    If you successfully complete the Trial Period, your loan will automatically be modified pursuant to the terms of this Agreement (the "Modification"). However, if you fail to send any full payment on or before the respective due date during the Trial Period, the Trial Period will immediately terminate and the Modification offer will be null and void. Acceptance and application of late payments during the Trial Period does not waive Ocwen's right to terminate the Trial Period, nullify the Modification, or resume foreclosure or other activities related to the delinquency of the loan under its original terms.

5.    After the Trial Period expiration, you promise to make payments of principal and interest , and, if applicable, any escrowed amount as outlined in section 3,on the same  day of each succeeding month until all amounts owed under the Note and Modification are paid in full. The maturity date of your Mortgage will be 8/17/2033.

6.    Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be converted to a fixed rate of 2.00017% . This rate will remain in effect until the maturity of your loan.

7.    If you sell your property, refinance or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
Helping Homeowners is What We Do! ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

8.    You will comply with all other covenants, agreements, and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

9.    You understand and agree that:

(a)    All the rights and remedies, stipulations, and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

(c)    Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

(d)    Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

(e)    In the event that a foreclosure is pending, the foreclosure action will not be dismissed. However, Ocwen will take reasonable action to place it on hold pending your completion of the Trial Period. If the Trial Period is successfully completed, any pending foreclosure action will be dismissed.

(f)    During the Trial period, your loan will continue to be delinquent. As a result, late fees may be charged and credit reporting will continue pursuant to the original terms of your Note.

(g)    You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators and assigns.

(h)    You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

(i)    Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

Ocwen Loan Servicing, LLC

By: _____
Authorized Officer    **Desmond Cummings**

FEB 1 0 2015

Estate of Julia Marie Holmes

_____

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

## ACKNOWLEDGMENT

STATE OF _Georgia_

COUNTY OF _Fulton_

On _10-30-14_ before me, _Robert L. Thompson_, PERSONALLY APPEARED
    (DATE)              NAME, TITLE OF OFFICER E.G. NOTARY PUBLIC

_Deidra Hooper_

---

NAME(S) OF SIGNERS

____ personally known to me -or-    _X_    proved to me on the basis of satisfactory evidence to be the

person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they

executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument

the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SIGNATURE OF NOTARY

NOTARY SEAL

MY COMMISSION EXPIRES ON: _10-20-2015_

---

**Description of Attached Document:**

Title to Type of Document:  _Loan Modification Agreement_

Document Date:  _10-30-2014_    Number of Pages:  _2_

Signers Other Than Named Above:  _N/A_

"GENJURAT" 3/11/97 PN

| Name: | Jesse Leo Hooper, Jr. | | | | | |
|---|---|---|---|---|---|---|
| **BK Case Number:** | 17-68269-bem | | | | | |
| **Filing Date:** | 10/19/2017 | | | | | |
| **Post First Due:** | 11/1/2017 | | | **Completed By:** | Madhuys | |
| **Post-Petition Due** | **Date Received** | **Amount Received** | **Amount Applied** | **Suspense Application** | **Suspense Balance** | **Comments** |
| No Payments Received | | | | | | |

| Name: | Jesse Leo Hooper, Jr. | | | | | |
|---|---|---|---|---|---|---|
| BK Case Number: | 17-68269-bem | | | | | |
| Filing Date: | 10/19/2017 | | | | | |
| Completed by: | **Madhuys** | | | | | |
| **Due Date** | **Total Payment** | | **Principal** | **Interest** | **Escrow** | **Optional Products** |
| 11/1/2017 | $ | 730.70 | $ 371.94 | $ 138.36 | $ 220.40 | |
| 12/1/2017 | $ | 730.70 | $ 372.56 | $ 137.74 | $ 220.40 | |
| 1/1/2018 | $ | 730.70 | $ 373.18 | $ 137.12 | $ 220.40 | |
| 2/1/2018 | $ | 730.70 | $ 373.81 | $ 136.49 | $ 220.40 | |
| 3/1/2018 | $ | 730.70 | $ 374.43 | $ 135.87 | $ 220.40 | |
| **Total Due** | **$** | **3,653.50** | **$ 1,865.92** | **$ 685.58** | **$ 1,102.00** | **$          -** |

| NOPC Filed Date |
| --- |
|  |
|  |
|  |
|  |
|  |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

JESSE LEO HOOPER, JR. and
DEIDRA DENISE HOOPER,

Debtor.

Case No. 17-68269-SMS

Chapter 13

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on April 17, 2018, I served a copy of **Notice of Hearing and Motion for Relief from the Automatic Stay** which was filed in this bankruptcy matter on April 17, 2018, in the manner indicated:

**The following parties have been served via e-mail**:

Monica K. Gilroy
mkg@dgllclaw.com

Nancy J. Whaley
ecf@njwtrustee.com

Robert Scott Rickman
thegeorgialawfirm@gmail.com

Daniel R. Saeger
dan@whitfieldcountylaw.com

**The following parties have been served via U.S. First Class Mail**:

Jesse Leo Hooper, Jr.
12550 Bethany Rd
Alpharetta, GA 30004-1010

Julia Marie Holmes
1630 Mary Sue Drive
Baton Rouge, LA 70810

Deidra Denise Hooper
12550 Bethany Rd
Alpharetta, GA 30004-1010

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE**
**AND CORRECT.**

Dated: April 17, 2018

_____

Radha Gordon, Bar No.: 347192
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: rgordon@aldridgepite.com